United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

TULSEE NATHU, et al.,

Plaintiffs,

v.

CITY OF OAKLAND,

Defendant.

Case No. 4:20-cv-05242-SBA (LB)

**DISCOVERY ORDER**

Re: ECF No. 70

**INTRODUCTION**

The plaintiffs — who are hotel developers — dispute the City of Oakland's (the City's) denial of their application to build a hotel. In June 2018, the Oakland Planning Commission approved a conditional-use permit to build the hotel, finding that the project complied with applicable regulations, including Oakland Planning Code § 17.103.050(A)(2). § 17.103.050(A)(2) requires a hotel developer to consider "the impact of the hotel or motel on the demand in the City of housing, public transit, and social services." A labor union appealed the permit to the Oakland City Council, in part on the ground that the plaintiffs did not comply with § 17.103.050(A)(2).

During the appeal, the union submitted economic studies about the plaintiffs' alleged failure to consider the impact of hotel employees on housing, public transportation, and social services. In response, the plaintiffs' counsel gave a PowerPoint presentation at a City Council hearing. That presentation included an economic analysis of construction costs, expected wages to employees,

tax revenue to the City from the project, and the "cost-burden" of each new Oakland residence, all to show that the plaintiffs complied with § 17.103.050(A)(2). Ultimately, the City granted the union's appeal, finding that the plaintiffs' application did not consider the impact of the hotel on housing, public transportation, and social services. The plaintiffs then filed this lawsuit for a writ of mandate under California law to allow the construction of the hotel and damages under several federal constitutional theories.[1]

The city wants discovery, including a deposition, about the facts and figures included in the plaintiffs' PowerPoint presentation to the City Council. The plaintiffs object on the ground that the discovery seeks attorney-client communications and the plaintiffs' counsel's work product.[2] The court can decide the dispute without oral argument. N.D. Cal. Civ. L.R. 7–1(b). The court denies the plaintiffs' motion to quash the discovery because the plaintiff did not establish that the information is privileged or work product. The deposition notice is narrowly tailored to seek only information about construction costs, property taxes, and the economic analysis presented to the City Council. The City disavows any interest in work product or privileged information and seeks only facts. The facts were disclosed by the plaintiffs' counsel and are not privileged or work product.

**STATEMENT**

The City's June 7, 2022 deposition notice seeks a deposition of the person most knowledgeable of "RAM Hotels" about the following categories: (1) the economic analysis that RAM prepared that was presented to the City Council on June 16, 2020; (2) the economic analysis reflected in the PowerPoint presentation that day; (3) the quantitative assessments that RAM conducted to determine whether the hotel project complied with Oakland Planning Code § 17.103.050(A)(2); and (4) the qualitative assessments conducted by RAM to determine whether

---

[1] Disc. Letter Br. – ECF No. 70 at 1–2; Second Am. Compl. – ECF No. 29. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Disc. Letter Br. – ECF No. 70 at 2–5.

the hotel project complied with Oakland Planning Code § 17.103.050(A)(2). It also seeks any non-privileged documents related to the four deposition topics that have not been produced already.[3]

At the June 16, 2020 City Council meeting, the plaintiffs' counsel gave a PowerPoint presentation that purported to show that the plaintiffs complied with Oakland Planning Code § 17.103.050(A)(2)'s requirement that a hotel developer consider "the impact of the hotel or motel on the demand in the City of housing, public transit, and social services." Six pages of the ten-page PowerPoint refer to economic figures.[4] These figures are the subject of the parties' discovery dispute.[5]

Page three lists hotel construction costs of $42.7 million broken into categories, such as labor and materials, development costs, and sales tax.[6] The City seeks discovery of the source of the costs, given the plaintiffs' claim of over $10 million in damages related to construction costs and their failure to provide any information substantiating their claimed damages.[7]

Pages four and five cite the taxes that that the hotel expected to pay.[8] Because the plaintiffs claim that the City's denial of the permit cost them $11 million in property taxes, the City seeks discovery about how the plaintiffs calculated the taxes.[9]

Pages six through eight present information about how the benefits to the community of new jobs (such as annual payroll) outweigh any burdens (such as the cost to the City of new residents).[10] Because this information is relevant to whether the plaintiffs complied with Oakland Planning Code § 17.103.050(A)(2), the City seeks discovery about the sources of this information.[11]

---

[3] Am. Notice of Dep. – ECF No. 70-2 at 3.

[4] 6/16/2020 PowerPoint, Ex. 1 to Disc. Letter Br. – ECF No. 70-1 at 3–8.

[5] Disc. Letter Br. – ECF No. 70 at 3–5.

[6] 6/16/2020 PowerPoint, Ex. 1 to Disc. Letter Br. – ECF No. 70-1 at 3.

[7] Disc. Letter Br. – ECF No. 70 at 4.

[8] 6/16/2020 PowerPoint, Ex. 1 to Disc. Letter Br. – ECF No. 70-1 at 4–5.

[9] Disc. Letter Br. – ECF No. 70 at 4.

[10] 6/16/2020 PowerPoint, Ex. 1 to Disc. Letter Br. – ECF No. 70-1 at 6–8.

[11] Disc. Letter Br. – ECF No. 70 at 4.

"RAM Hotels" is not a plaintiff. The PowerPoint presentation refers to "Mandela Hotel" and to "Ram Hotels," and the operative complaint specifies that a partnership called II Ram would operate the planned hotel (called Mandela Hotel) if the City approved the project.[12]

The operative complaint has the following claims: (1) a writ of mandate under California law to allow construction of the hotel; (2) an equal-protection claim for damages and attorney's fees under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983; (3) an equal-protection under the Fourteenth Amendment and § 1983 on a *Monell* theory; (4) a claim for declaratory judgment under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57; (5) a claim for declaratory relief under Cal. Civ. Proc. Code § 1060; (6) a claim of an unlawful taking in violation of the Fifth Amendment; and (7) a due-process claim for an unlawful regulatory scheme.[13] In claim two, the plaintiffs alleged the following about damages:

> "Plaintiffs have incurred damages including . . . increased construction costs of in excess of $12 million; increased furniture fixture and equipment costs of in excess of $1.1 million; and increased soft costs of $1.2 million due to the delay in commencement of the construction of the hotel caused by Defendant's wrongful acts; increased soft costs (including without limitation consultants and attorneys) of $1.4 million; and increased agency fees of $600,000. In addition, the $12 million increase in costs of construction caused by Defendant's wrongful acts will result in Plaintiffs having to pay $11.7 million more in property taxes over the life of the hotel than Plaintiffs would have had to pay had the Defendant acted fairly and legally."[14]

The plaintiffs claim total damages of $48 million.[15]

---

[12] 6/16/2020 PowerPoint, Ex. 1 to Disc. Letter Br. – ECF No. 70-1 at 1 (Mandela Hotel propounds the PowerPoint), 2 (same plus "Ram Hotels' Commitments"), 7 ("Mandela Hotel Burden on City of Oakland"), & 9 (RAM Hotels' commitments). The plaintiffs are individuals, a limited partnership named II Ram, and II Ram's general partner 1001 Ram Inc. II Ram is a party to an agreement with CalTrans to acquire the site for the Mandela Hotel and would own and operate the hotel if the City of Oakland approved the project; Second Am. Compl. – ECF No. 29 at 4–5 (¶¶ 12–13).

[13] Second Am. Compl. – ECF No. 29 at 14–23 (¶¶ 44–82).

[14] *Id.* at 17–18 (¶ 56).

[15] *Id.* at 24 (¶ 84(b)).

## LEGAL STANDARDS

### 1. Attorney-Client Privilege

The Ninth Circuit has defined the relevant standard for determining privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (cleaned up). The attorney-client privilege does not apply to an attorney's communications about business matters (as opposed to legal advice). *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). "Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys." *Id.*

"[The] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *Ruehle*, 583 F.3d at 607. In other words, "[t]he party asserting the privilege bears the burden of proving each essential element" of the attorney-client-privilege test. *Id.* at 608. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id*.

### 2. Work Product

"The work-product doctrine protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (cleaned up). The party asserting work-product protection has the burden of establishing that the work-product doctrine applies to the document or tangible thing in question. *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2015 WL 831539, at *2 (N.D. Cal. Feb. 23, 2015) (citing *Skynet Elec. Co. Ltd. v. Flextronics Int'l, Ltd.*, No. C 12-06317-WHA, 2013 WL 6623874, at *4 (N.D. Cal. Dec. 13, 2013)).

"For work product, protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007) (cleaned

up). This may occur where "a party discloses protected information to a third party who is not bound to maintain its confidence, or otherwise shows disregard for the protection by making the information public." *Great Am. Assur. Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (cleaned up).

**ANALYSIS**

The City has limited its discovery to fact information included in the plaintiffs' counsel's presentation to the Oakland City Council and said that it is not interested in "the legal theories or reasons for the presentation."[16] In short, it seeks fact discovery relevant to the plaintiffs' damages theory, not work product or privileged information. The plaintiffs do not establish why the information is privileged or work product. They contend that "the economic analysis was prepared by Plaintiffs' counsel" and that the discovery is "an improper attempt to make Plaintiffs' counsel into a witness."[17] But the plaintiffs do not seek a deposition of counsel and instead seek the deposition of RAMS Hotel's person most knowledgeable about the facts. Citing *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994), the plaintiffs also contend that the arguments made by counsel in a judicial forum are privileged and work product.[18] Again, the City seeks information and documents from the plaintiffs (through the person most knowledgeable), not the plaintiffs' counsel. The court denies the plaintiffs' motion to quash and allows the discovery.

First, the plaintiffs have not explained how economic figures are privileged. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 608. Nothing about the data suggests that it was made to seek legal advice or was made in confidence. *Id.* at 607. Moreover, the data was disclosed publicly.

In addition, the economic information sought here is not typically legal advice and instead is business information that is not privileged. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076; *In*

---

[16] Disc. Letter Br. – ECF No. 70 at 4.

[17] *Id.* at 3.

[18] *Id.* (citing *EEOC*, 157 F.R.D. at 466 ("[T]he selection and compilation of relevant facts . . . is the heart of the work product doctrine.").

*re Fischel*, 557 F.2d 209, 212 (9th Cir. 1977) (attorney-client privilege did not protect attorney summaries of client's business transactions with third parties).

Second, the underlying facts here are not privileged or work product. "The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Here, "the City is only interested in the economic facts and figures included in [the plaintiffs' counsel's] presentation" and "seeks information related to construction costs and property taxes, and the economic analysis which purports to show how the Mandela Hotel benefits the City of Oakland." [19]

Third, the information is relevant and discoverable, on the merits and about damages.

Fourth, the plaintiffs note that "RAM Hotels" is an "undefined term to any of the parties, who will testify on '[t]he economic analysis prepared by RAM Hotels which was ultimately presented at the Oakland City Council Meeting on June 16, 2020.'"[20] As discussed in the Statement, the plaintiffs' PowerPoint presentation to the City Council refers to "Mandela Hotel" and "Ram Hotels," and the operative complaint specifies that a partnership called II Ram would operate the planned hotel (called Mandela Hotel) if the City approved the project.[21] The City also points out that it used the term "RAM Hotels" because the plaintiffs regularly referred to it in their depositions.[22] This is an issue that the parties can work out: the idea is that the person most knowledgeable about the fact issues can be produced — as is customary in Rule 30(b)(6) depositions — to testify about the noticed issues.

Finally, a related point is that this controversy seems blown out of proportion to the City's requested discovery. The fact issues are relevant. A Rule 30(b)(6) deponent can be examined on

---

[19] *Id.* at 4.

[20] *Id.* at 2 (quoting Am. Notice of Dep. – ECF No. 70-2 at 3).

[21] 6/16/2020 PowerPoint, Ex. 1 to Disc. Letter Br. – ECF No. 70-1 at 1–2, 7, & 9 (references to Mandela Hotel and Ram Hotel); Second Am. Compl. – ECF No. 29 at 4–5 (¶¶ 12–13) (listing plaintiffs, including II Ram, a partnership that would operate the hotel if the City approved the project).

[22] Disc. Letter Br. – ECF No. 70 at 4.

United States District Court
Northern District of California

the plaintiffs' liability and damages theories. And the City has disavowed any interest in work product or privileged information and does not seek to depose counsel.

In sum, the plaintiffs must produce deponents to address the City's narrowed discovery requests, as set forth in the discovery letter and as summarized in this order.

**CONCLUSION**

This resolves ECF No. 70.

**IT IS SO ORDERED.**

Dated: July 13, 2022

LAUREL BEELER
United States Magistrate Judge